MaddeN, Judge,
delivered the opinion of the court:
The plaintiff, a former lieutenant colonel in the Army of the United States, seeks to recover disability retirement pay from March 9, 1946, when he was released from active duty “not by reason of physical disability.” The plaintiff bases *437 his claim on the ground that the Secretary of the Army, acting through the Board for the Correction of Military Records, acted arbitrarily, capriciously and unlawfully when on October 1,1954, the Board denied the plaintiff’s application for correction of his military records to show that at the time of his release from active duty he was sufficiently incapacitated to entitle him to disability retirement with pay under the provisions of the Act of April 3,1939, 53 Stat. 555, 557, 10 U. S.C.456 (1946 ed.).
On the basis of the pleadings and documents submitted by the parties, the plaintiff and the defendent have filed cross motions for summary judgment.
The defendant’s motion for summary judgment dismissing the petition is based on three grounds: (1) that the court is without jurisdiction to render judgment for disability retired pay allegedly lost through the arbitrary decision of a correction board which has been approved by the Secretary involved; (2) that in any event the record does not establish the facts which would warrant the conclusion that the Army Board for the Correction of Military Records acted in an arbitrary manner, and (3) that the plaintiff’s claim, if any, accrued on March 9,1946, when he was released to inactive duty not by reason of physical disability, and that such claim is accordingly barred by the six-year statute of limitations under the petition which was filed on January 18, 1956.
On the matter of the jurisdiction of this court to render judgment for disability retired pay allegedly lost because of an arbitrary decision by a Board for the Correction of Military Records, the same contention as made herein was made by the defendant in the cases of Suter v. United States, 139 C. Cls. 466, cert. den. 355 U. S. 926, and Friedman. v. United States, ante, p. 239. In the latter decision the court examined the language of section 207 of the Legislative Reorganization Act of 1946, as amended, October 25, 1951, 65 Stat. 655, and the legislative history of that statute, and concluded that Congress did not intend the decisions of that Board to be final and conclusive on the courts of the United States, nor did Congress intend to preclude the sort of “review?’ which the court must necessarily make in deciding an action to re *438 cover lost pay. The right to retirement pay is statutory and, in this case, is based upon the Act of April 8, 1939, swpra. In determining whether or not the plaintiff was denied his statutory right to disability retired pay, the court is merely exercising its jurisdiction under 28 U. S. C. § 1491, to render judgment upon any claim against the United States founded upon an act of Congress. The rendering of a money judgment on such a claim and the necessary, but incidental, type of “review” involved therein, where the plaintiff has been deprived of his statutory rights because of an unsupported decision of the correction board, does not have the effect of actually changing an official record or of compelling executive action. We conclude, as we did in the Friedmcm and Suter cases, supra, that this court has jurisdiction over the claim stated in this petition.
With respect to the defendant’s contention that the plaintiff’s claim is barred by the six-year statute of limitations, this court has held that where a plaintiff has received no determination of his eligibility for disability retirement pay by any board until the correction board has acted, his cause of action accrues not at the time of his separation from the service, but at the time of the alleged wrongful action of the correction board, approved by the Secretary, in wrongfully refusing to correct the records and grant the plaintiff disability retirement with pay. Uhley v. United States, 128 C. Cls. 608; Furlong v. United States, 138 C. Cls. 843; Proper v. United States, 139 C. Cls. 511; Friedman v. United States, supra; Suter v. United States, supra. Accordingly, we conclude that the claim stated herein is not barred by the statute of limitations.
We now turn to the question whether on the record before the court the adverse decision by the Army Board for the Correction of Military Records was in accordance with the law and was supported by the evidence.
The plaintiff entered on active military duty on February 3, 1941, as a captain in the Field Artillery Reserve of the Army of the United States. In September 1944, while serving in Northern France, the plaintiff began to experience numbness and weakness of both thighs and legs, with loss of temperature sensation in his feet. There is recorded in his *439 medical files a dispensary visit on October 24,1944, at which time the above symptoms were described by the plaintiff, but the examining physician found no objective evidence of any disease which he was able to identify. These symptoms persisted with periods of remission until his release from active duty on March 9, 1946. On the occasion of the plaintiff’s terminal physical examination, he called the attention of the examining physicians to the above symptoms, and X-rays were taken which showed no significant abnormalities. No neurological tests were made. His release from active duty was not by reason of physical disability.
Thereafter, the plaintiff experienced fatigue, afternoon drowsiness, stiffness of the knees, numbness in his feet, difficulty in walking, and dizziness. In 1947 he underwent examinations at a clinic in Kansas City, Missouri, and his symptoms were attributed to hypothyroidism. In 1948 a neurologist in Kansas City, Missouri, made a clinical diagnosis of multiple sclerosis for the first time. Since that time the plaintiff’s symptoms have persisted in varying degrees, with periods of remission and exacerbation. He began to experience increasing dysfunction of the right arm and right leg, loss of memory of recent events, lack of energy, easy fatigability, loss of sexual powers, inability to attend to his regular work as efficiently as previously (the plaintiff is an attorney), staggering gait, poor coordination, and slurring of speech. Some time in 1949 or early in 1950, he underwent an Army physical examination in connection with the renewal of his commission in his Reserve component. This examination included neurological tests which indicated that he was suffering from multiple sclerosis, and as a result thereof, the Army discharged him from the Active Reserve. In July 1951, the Veterans Administration, following neurological examinations, determined that the plaintiff was suffering from multiple sclerosis and that he had contracted this disease while serving on active duty in the Army in 1944. He was given a disability pension by the Veterans Administration effective January 4, 1950, computed on the basis of 30 percent disability. On July 13,1951, the pension was increased to reflect 50 percent disability.
*440 On January 14,1953, the plaintiff filed an application with the Army Board for the Correction of Military Records, asking that his record be corrected to show that he had been relieved from active duty on March 9, 1946, by reason of physical disability, with entitlement to retirement pay benefits from that date. On September 30, 1953, the Army Board for the Correction of Military Records forwarded the plaintiff’s application for correction, together with supporting data, to the Office of the Surgeon General, Physical Standards Division, and requested that the plaintiff’s records be reviewed, together with the Veterans Administration records pertaining to the plaintiff, and that the Office of the Surgeon General furnish the Board with comment and opinion regarding the plaintiff’s “eligibility for retirement for physical disability under the laws, rules, regulations and policies in effect at the time of his relief from active duty.”
On October 14, 1953, the Office of the Surgeon General sent the following reply to the Board for the Correction of Military Records:
1. The records in the case of Lt. Colonel Patterson have been carefully reviewed. The available medical evidence indicates that the subject complained of symptoms in October 1944 while on active duty which may well represent initial manifestations of multiple sclerosis.
2. Multiple sclerosis is a disease which often presents a very difficult diagnostic problem. Early manifestations often go relatively unnoticed and frequently a diagnosis cannot be substantiated until later in the course of the illness. The disease process is subject to remissions and exacerbations.
3. If a diagnosis of multiple sclerosis had been made at the time of his discharge he would have properly been retired for physical disability under the laws, rules, regulations, and policies in effect at that time.
Nine days later, the Office of the Surgeon General advised the Board for the Correction of Military Records that it wished to add the following paragraph to the above-quoted opinion of October 14,1953:
4. Although this office would not consider it possible to definitely establish the time of onset of the subject’s multiple sclerosis, it is considered most probable that *441 the onset did occur during a period of active military-service. It is the further opinion of this office that any doubt should be resolved in favor of this individual.
On January 26, 1954, the Board for the Correction of Military Records requested the Adjutant General of the Army to arrange for the appearance of the plaintiff before a medical board and, if in order, for his further appearance before a physical evaluation board to determine his eligibility for retirement for physical disability at the time of his relief from active duty on March 9,1946, “under the laws, rules, regulations and policies in effect at that time.” On April 26, 1954, the plaintiff was admitted to the United States Army Hospital at Fort Riley, Kansas, for the purpose of such an evaluation. On May 3, 1954, a medical board at the hospital concluded that the plaintiff had incurred multiple sclerosis in 1944 while on active duty, and that “if the disease had been diagnosed in this early phase, the man would have been considered unfit for military service as of that date; namely, 24 October 1944.” The Medical Board recommended that the plaintiff meet a Physical Evaluation Board inasmuch as in the opinion of the Medical Board the plaintiff had become physically incapacitated for military duty in October 1944 and was permanently incapacitated for further military service at the time of his discharge on March 9,1946.
On May 6, 1954, a Physical Evaluation Board (formerly known as a Retiring Board) was convened at the United States Army Hospital at Fort Riley, Kansas. ' That board examined the plaintiff and conducted a hearing at which the plaintiff and certain Army medical witnesses testified on May 6,1954. It found that the plaintiff had incurred multiple sclerosis while serving on active duty in 1944 in time of war; that the disease was the result of performance of duty; that the disease was permanently aggravated by military duty, was permanently incapacitating, and, as of May 6, 1954, was 70 percent disabling. In the report of proceedings the Physical Evaluation Board made the following recommendations and remarks:
That the records of this officer be corrected to reflect that he was disabled as a result of his military service so as *442 to be permanently incapacitated for active duty on 9 March 1946, and that this officer be re-examined and re-evaluated in from six to twelve months; Based upon this officer’s medical history, he was eligible for retirement for physical disability at the time of his relief from active duty. It is the finding of this Board that this disability may be permanent.
At the conclusion of the hearing, the President of the Physical Evaluation Board made the following statement of conclusions:
The Board unanimously agrees that this officer was permanently incapacitated for active duty as a. result of his military service and that such incapacity did exist upon his relief from active duty on 9 March 1946'.
The medical history of Lt. Col. Patterson was reviewed, his testimony and the testimony of the medical witness, considered and the Board finds that at the time this officer was relieved from active duty he had and still has at the present time, Multiple Sclerosis and that this officer is not physically qualified for active duty. This condition may become more disabling in the future and, therefore, it is the finding of this Board that his disability may be permanent.
On May 28, 1954, the Army Board for the Correction of Military Becords sent the following communication to the Army Physical Beview Council:
1. Beference is made to the application from Donald T. Patterson, O 265 891, wherein he requests that his records be corrected to show him relieved from active duty by reason of physical disability, together with the proceedings of a Physical Evaluation Board convened at US Army Hospital, Fort Biley, Kansas, on 6 May 1954.
2. It is requested that the pertinent records pertaining to the applicant be reviewed and this office furnished an advisory opinion as to whether or not the applicant is considered to have qualified for disability retirement pay benefits under the provisions of the laws, rules, regulations and policies in effect at the time of his relief from active duty on 9 March 1946.
On June 8,1954, the recorder of the Army Physical Beview Council made the following reply:
A review of all available medical records reveals that Donald T. Patterson, 0-265891, now détermined to have *443 “multiple sclerosis” was not qualified for disability retirement pay benefits at the time of his relief from active duty, 9 March 1946, under provisions of the laws, rules, regulations and policies then in effect.
"We shall discuss the function and jurisdiction of the Army Physical Review Council later herein.
On July 29, 1954, the Army Board for the Correction of Military Records again communicated with the Office of the Surgeon General, Psychiatry and Neurological Division. The Correction Board forwarded to the Surgeon General the file pertaining to the plaintiff and the record of the proceedings before the Physical Evaluation Board in May 1954. The Correction Board made the following request:
It is requested that this office be furnished an advisory opinion regarding the findings of the Physical Evaluation Board and whether or not the applicant is considered to have been eligible for retirement pay benefits by reason of disability existing at the time of his relief from active duty on 9 March 1946 under the laws, rules, regulations and policies in effect at that time.
On August 10, 1954, the Office of the Surgeon General, through the Assistant Chief, Psychiatry and Neurology Consultant, made the following reply to the Correction Board:
1. The records in the case of Lt. Colonel Patterson have been carefully reviewed.
2. The Surgeon General concurs in the findings of the Physical Evaluation Board convened at U. S. Army Hospital, Fort Riley, Kansas, that Colonel Patterson currently has multiple sclerosis, that this condition had its inception during his active military service, and existed, although undiagnosed and with minimal functional impairment, at the time of his relief from active duty on 9 March 1946.
3. If a diagnosis of multiple sclerosis had been made at the time of his discharge he would have been eligible for retirement pay benefits by reason of disability under the laws, rules, regulations, and policies in effect at that time.
On September 8,1954, a hearing was held before the Army Board for Correction of Military Records. Documentary evidence considered by the Board consisted of the plaintiff’s Army military records, his medical records compiled by the *444 Veterans Administration, the reports of several private physicians, the above-described report and recommendation of the Army Medical Board convened at Fort Riley, Kansas, the report and recommendation of the Physical Evaluation Board convened at Fort Riley, Kansas, the three opinions rendered by the Office of the Surgeon General, and the advisory opinion rendered by the Army Physical Review Council. It does not appear that this latter opinion of the Review Council was called to the attention of the plaintiff’s counsel. The plaintiff was the only witness called to give oral testimony before the Board. It was in the course of this testimony that the plaintiff advised the Board of the fact that the first neurological examination given him by the Army in either 1949 or 1950 resulted in the discovery by the Army that he had multiple sclerosis, and that as a result of this discovery he was discharged from the Active Reserve and placed in the Honorary Reserve.
On September 9, 1954, the Correction Board denied the plaintiff’s application for correction of his records. In its findings of fact the Board noted that all Army physical examinations up to October 1948, had shown that the plaintiff was not permanently incapacitated for general service. In this finding no mention was made of the Army physical examinations made in 1949 or 1950 and testified to by the plaintiff which examinations revealed the fact that he had multiple sclerosis and resulted in his discharge from the Active Reserve. The Board found that the Office of the Surgeon General had stated that available medical evidence indicated that the plaintiff complained of symptoms in 1944 while on active duty, which symptoms may well have represented the initial manifestations of multiple sclerosis; that because of the nature of the disease, it was not possible to definitely establish the exact time of onset, but that it was considered most probable that the onset did occur during plaintiff’s active military service, and that any doubt should be resolved in favor of the plaintiff. The Correction Board did not include in this finding the statement of the Surgeon General that if a diagnosis of multiple sclerosis had been made at the time of the plaintiff’s discharge, he would have properly been retired for physical disability under the laws, rules, regulations and policies in effect at that time.
*445 In finding 4, the Board summarized the findings, conclusions and recommendations of the Physical Evaluation Board on May 6,1954, but did not mention the findings of the Medical Board. The Correction Board noted that the Physical Evaluation Board had recommended that the plaintiff be found physically unfit for military service by reason of multiple sclerosis originating in September 1944, as a result of the performance of duty, and that his records be corrected to reflect that the plaintiff was disabled as a result of military service so as to be permanently incapacitated for active duty on the date of his relief to inactive duty on March 9,1946.
In finding 5 the Correction Board stated that the plaintiff’s case had been forwarded to the Physical Review Council for comment and opinion and that the Council had expressed the opinion that the plaintiff was “not qualified for disability retirement pay benefits at the time of his relief from active duty.”
In finding 6 the Correction Board stated that the Office of the Surgeon General on August 10,1954, had noted its concurrence with the findings of the Physical Evaluation Board to the effect that the plaintiff had incurred multiple sclerosis while on active military service, that it had existed at the time of his relief from active duty on March 9,1946, and that if a diagnosis of the disease had been made at the time of his discharge, the plaintiff would have been eligible for disability retirement pay benefits under the laws, rules, regulations and policies in effect at that time.
In finding 7 the Correction Board quoted a letter from the Veterans Administration to the effect that it had found that the plaintiff had incurred multiple sclerosis during his active service in World War II and that his disability had been evaluated by the Veterans Administration at 30 percent from January 4,1950, and at 50 percent from July 13,1951.
The Correction Board made the following conclusions:
1. That the applicant was not physically incapacitated at the time of his relief from active duty on 9 March 1946 to a degree sufficient to warrant his retirement for physical disability under the provisions of the Act of 3 April 1939.
2. That it concurs in the opinion of the Army Physical Review Council to the effect that the applicant did not *446 qualify for disability retirement pay benefits at the time of his relief from active duty.
3. That the symptoms noted in the applicant’s records and which were later attributed to be early manifestations of multiple sclerosis were mild at the time of his relief from active duty and not disabling.
4. That no error or injustice in the military records of the applicant are shown under the standards of procedure in effect at the time of his relief from active duty and that his military records show no basis for granting his request.
The Board then recommended that the plaintiff’s application for correction be denied. Two members of the Correction Board dissented and recommended that the plaintiff be certified for retirement pay benefits under the provisions of the Act of April 3, 1939. On September 27, 1954, the Secretary of the Army approved the adverse decision of the majority of the Correction Board.
We are of the opinion that the decision of the Correction Board that the plaintiff did not qualify for disability retirement benefits from the time of his relief from active duty because his physical disability at that time was not sufficiently severe to warrant his receiving the benefits of the Act of April 3, 1939, was unsupported by the evidence before the Board and that it was also erroneous as a matter of law. The findings and conclusions of the Correction Board reveal that it agreed with the various medical authorities, private, Army, and Veterans Administration, that the plaintiff had contracted multiple sclerosis during his active military service in 1944 and that he was suffering from this disease at the time of his relief from active duty in May of 1946. The Board’s conclusions show that it considered that the only question for decision was whether or not under the laws, rules, regulations and policies in effect on March 9,1946, the plaintiff, admittedly in the early stages of multiple sclerosis, qualified for disability retirement pay benefits. This question was essentially a question of law and the Board had quite properly sought the advice of the Office of the Surgeon General. As noted above, the Office of the Surgeon General had, both prior to and after the Physical Evaluation Board proceedings, given its opinion that if the Army had *447 known that-the plaintiff had multiple sclerosis at the time of his discharge, he would have been eligible for disability retirement benefits under the laws, rules, regulations and policies in effect at that time. For some reason, the Correction Board was not entirely satisfied with the opinion of the Office of the Surgeon General and sought the advice of the Army Physical Keview Council on this same question.
The question for determination by this court is whether or not the Correction Board was justified in relying on the opinion of the Army Physical Review Council, which, contrary to the opinion of the Office of the Surgeon General and of the Physical Evaluation Board, held that the plaintiff was not qualified for disability retirement pay benefits under the laws, rules and regulations in effect on March 9, 1946. The particular rules, regulations and policies which the Office of the Surgeon General and the Army Physical Review Council had reference to were not specifically mentioned. However, under the provisions of the laws and the Army regulations in effect on March 9, 1946, it appears that the opinions expressed by the Physical Evaluation Board and by the Office of the Surgeon General were correct.
Prior to the passage of the Career Compensation Act of 1949, eligibility for disability retirement pay benefits did not depend on a finding that the officer involved was suffering from any particular degree of disability, but rather upon a finding that the officer had become incapacitated for active service and that the incapacity was an incident of his service. R. S. § 1251, 10 U. S. C. 933; Army Regulation No. AR 605-245, section 2, paragraph 7, approved June 17,1941, and in effect in the form so approved on March 9, 1946. Since the enactment of the Act of April 3,1939, supra, those laws and regulations have been applicable to reserve officers on active duty.
Army Regulation No. AR 605-250, approved March 28, 1944 (and in effect as so approved on March 9,1946), relating to Army Retiring Boards for commissioned officers, provided in Section TV entitled “Findings”, paragraph 30, in part as follows (paragraph 30) :
Incapacity, character of, etc. — a. Character. — Incapacity for service by reason of physical disability relates *448 to a permanent incurable disease, injury, or infirmity which prevents the reasonable fulfillment of the purpose of the officer’s employment. Such employment embraces the duties of his office in peace and war which are imposed by law, regulation, orders, or custom of the Service.
b. Permanency. — The physical disability, on account of which the board is authorized to find an officer incapable of performing the duties of his office, must be permanent; that is, such that the removal or the disability within a reasonable time is highly improbable. If, however, the disease or injury is curable or of such character as to yield to treatment, even though a cure may require considerable time, the disability is not permanent. The test should be, is the disease or injury curable or incurable? If the disability is incurable within, a reasonable time, the board should find the officer incapacitated.
Army Eegulation No. AR 605-10, approved May 26,1944, and in effect unchanged on March 9, 1946, applicable to commissioned officers in the Army of the United States provides in Section IV, paragraph 20, of the Physical Standards and Physical Examination portion, that the physical standards for appointment, promotion, entry on active duty, and for retention of commission in the Army of the United States are those prescribed for the Officers’ Reserve Corps in AR 40-100 and AR 40-105. Army Regulation No. AR 40-105, approved October 14, 1942 and in effect unchanged in pertinent part on March 9, 1946, relates to the standards of physical fitness for a commission in the Regular Army or in the Army of the United States. Section XVIII of that regulation covers Nervous and Mental Disorders, and in paragraph 52c thereof it lists multiple sclerosis as a cause for rejection without any qualification whatsoever.
Under the provisions of the Career Compensation Act of 1949, supra, eligibility for disability retirement pay benefits depends not only on findings that the officer is incapacitated for active service and that the incapacity was an incident of the service, but also on a finding that under the Schedule for Rating Disabilities of the Veterans Administration, the officer is suffering from a disease or injury which is at least 30 percent disabling. The Act of June 27, 1946, 60 Stat. 319, expressly incorporated by reference Veterans Administra- *449 iion. Regulation No. 3 (a)[1] known as Schedule for Eating Disabilities, 1945 edition, which regulation prescribed a minimum mandatory disability rating of 30 percent for multiple sclerosis. In addition, Army Eegulation No. SR 40-120-1, October 9, 1953, entitled “Medical Service — Medical Standards of Fitness and Unfitness for Retention on Active Duty” provided in paragraph 87 as follows:
Multiple sclerosis and other degenerative diseases of the nervous system of this type are considered to render an individual unfit. However, in exceptional cases in which there has been a good clinical remission, retention under the provisions of SR 600-145 may be considered.
Upon the basis of the above discussed laws and regulations it follows that as of March 9, 1946, and at all times thereafter, a commissioned officer in the Aimy of the United States who incurred the disease of multiple sclerosis while serving on active duty, was, by the express terms of the applicable regulations, rendered unfit or incapacitated for such active duty and was entitled to disability retirement with pay, either before or after the enactment of the 1949 Career Compensation Act.
As was pointed out in the decision of the court in Proper v. United States, supra, an understanding of the nature of the disease of multiple sclerosis makes it clear why the disease is considered by the military authorities to render its victim unfit for active duty from its inception and to be a disease which is permanently incapacitating for further active service. The disease has long been considered incurable. It is unpredictable and affects the central nervous system. It is marked by periods of remission and exacerbation. A person suffering from it may, without any warning, lose control of his hands, legs, vision, his bodily functions and his emotional stability. His mental powers become disturbed and impaired as a result of this disease. An officer suffering from such a disease might at times become a danger both to himself and *450 to others with whom he might be serving on active duty, and it is undoubtedly for this reason that the Veterans Administration has long prescribed a mandatory minimum disability rating of 30 percent for this ailment and that the Army regulations referred to above provide that an individual suffering from the disease is considered unfit for commissioned service.
The Army Medical Board, the Army Physical Evaluation Board, and the Office of the Surgeon General all appear to have been familiar with the above-mentioned Army regulations in effect in 1946 and with the mandatory minimum disability rating of the Veterans Administration in effect at that time. They were certainly familiar with the characteristics of multiple sclerosis. All were of the opinion that the plaintiff had the disease while he was in active military service and that by reason of that fact he was permanently incapacitated for further military service on the date of his relief from active duty on March 9, 1946, and therefore entitled to disability retirement with pay under the laws and regulations in effect on that date.
The Army Physical Review Council was of a different opinion. That Council was established under Army Regulation 15-160, of August 20, 1953, pursuant to the authority conferred upon the. Secretary of the Army under sections 413 and 414 (a) of the Career Compensation Act of 1949, 63 Stat. 824 and 825. Those sections of the 1949 law provide as follows:
Sec. 413. The Secretary concerned shall prescribe regulations for the administration of. this title [Title IV] within his department or agency, including regulations which shall provide that no member of the uniformed services shall be separated or retired for physical disability without a full and fair hearing if such member shall demand it.
Sec. 414 (a). All duties, powers, and functions incident to the determination of fitness for active’ service, percentage-of disability at the time of separation from active service, and suitability for reentry into active service and entitlement to and payment of- disability severance pay shall be vested in the Secretary concerned.
*451 The Army Regulation referred to above, states that the purpose of the Army Physical Review Council is (1) to review all cases considered by Physical Evaluation Boards and (2) all cases arising under the provisions of section 411 of the Career Compensation Act of 1949.
Section 411 of the 1949 Act is the section which permits members of the uniformed services, retired for physical disability prior to the effective date of that Act and under the provisions of law in effect at the time of their retirement, to elect to qualify for the disability retirement pay benefits provided for in Title IV of the 1949 Act. In order to qualify for such benefits, officers already retired had to be at least 30 percent disabled at the time of retirement. Since, under prior law, percentage of disability played no part in the eligibility for retirement or in the computation of retired pay, it was necessary to make a determination of the percentage' of disability of such retired officers in order to inform them of how much retired pay, if any, they might receive under the elective provisions of the 1949 Act. It is obvious that this second function of the Physical Review Council had no part in the instant case since the plaintiff, whose relief from active duty was in 1946, was not yet being offered an election under section 411 of the 1949 Act.
As to the first function of the Physical Review Council, that of reviewing the findings of the Physical Evaluation Board, it appears from the record in this case that the Correction Board did not ask the Council to make such a review. However, if such a review had been requested, then the procedures prescribed by Army Regulation 15-160 were not complied with. Under that regulation, if the Council disagrees with the findings of the Physical Evaluation Board, it is required to return the case to the Physical Evaluation Board, or to substitute new findings of its own. If the new findings of the Council are adverse to the officer concerned, then the regulations provide that the Adjutant General must so notify the officer and give him seven or more days to rebut such adverse findings. Upon the filing of such a rebuttal, the record is to be forwarded to the Physical Disability Appeal Board for consideration and action. None of these steps, of vital importance to the plaintiff, were taken. *452 An agency of the Government has no right to proceed in complete violation of its own regulations which it has promulgated for the protection of the rights of those affected by its actions. Service v. Dulles, 354 U. S. 363.
The Physical Review Council’s complete failure to take any of the steps carefully prescribed by Army Regulations shows that the Council regarded the Correction Board’s inquiry as nothing more than a request for the Council’s legal opinion as to whether, on an agreed statement of facts, the plaintiff had, “under the laws, rules, regulations and policies then in effect” a right to disability retirement. To this inquiry the Council, with Delphic oracular brevity, said “No.” In so saying it was completely wrong. If it had attempted to support its “no” by even the most meager reasoning or reference to regulations, it would surely have had to recognize its error. Army Regulation 15-160 is here pertinent.
The members of the [Physical Review] Council will be guided by the law, and applicable regulations, principles, rules, and precedents established by Department of the Army, including medical standards as to fitness or unfitness stated by The Surgeon General, and legal opinions rendered and legal principles established by The Judge Advocate General. For physical evaluation board cases, if physical unfitness has been established, the percentage of disability will be determined in accordance with the Veterans Administration Schedule for Rating Disabilities, 1945 edition, and all extensions thereto. * * *.
If this court were to regard itself bound by such an unreasoned erroneous judgment of the military departments, denying to military personnel rights granted them by statutes and regulations, it should frankly abdicate its jurisdiction in such cases, and not invite litigants down a blind alley.
If we treat the Correction Board’s decision as a decision on a question of fact, the question being whether the plaintiff had or did not have multiple sclerosis in 1946, and if we treat it as a decision that he did not have the disease, there is not a scintilla of evidence to support it. If we treat it as a legal decision that, though he had the disease, he was not, under the rules, regulations and policies in effect *453 in 1946, eligible for disability retirement, there is not a scrap of authority for such a decision.
Under the applicable statutes and regulations, the plaintiff was entitled to be retired for service incurred disability on March 9, 1946. Suter v. United States, sufra. Accordingly, plaintiff is entitled to a judgment for disability retired pay from the date of his release from active duty on March 9, 1946, less the disability compensation received by plaintiff from the Veterans’ Administration.
The defendant’s motion for summary judgment is denied. The plaintiff’s motion for summary judgment is granted. The case is remanded to a commissioner of this court for a determination, pursuant to Eule 38 (c), of the amount of the judgment.
It is so ordered.
Fahy, Circuit Judge, sitting by designation, and Little-toN, Judge, concur.

 Section 3 of the Act of March 20, 1933, 48 Stat. 8, 9, authorized the President to prescribe by regulation the minimum degrees of disability which in his judgment should be recognized for disability compensation or pensions. Pursuant to that authority the President promulgated Veterans’ Regulation No. 3 (a) — Schedule for Rating Disabilities, approved June 6, 1933. It was the 1945 edition of that regulation which was incorporated by reference into the 1946 Act, supra.