**Charles C. HARPER**

v.

**The UNITED STATES.**

**No. 206–59.**

United States Court of Claims.
Nov. 7, 1962.
Rehearing Denied Jan. 11, 1963.
See 312 F.2d 436.

Paul R. Harmel, Washington, D. C., for plaintiff. Geiger, Harmel & Schuchat, Washington, D. C., on the briefs.

Katherine H. Johnson, Alexandria, Va., with whom was Asst. Atty. Gen., William H. Orrick, Jr., for defendant.

DAVIS, Judge.

Plaintiff is a dentist who served in the Army Dental Corps from April 16, 1942,

to December 21, 1944. In August 1942 he injured his back when he tried to extricate, under strenuous conditions, the bodies of two men from a wrecked airplane in England where he was then stationed. From that time on, he suffered recurrent back pain and difficulties. He was hospitalized in August–September 1943 (after a re-injury to the back), and also in October 1943—with diagnoses of sprain or strain. On his return from overseas in June 1944 for reassignment under the rotation program, he was examined, hospitalized for a period, and again found to be suffering from back trouble of the same general nature. A preliminary finding was made that he was disqualified for overseas duty and was fit only for limited duty in the United States. Being anxious to rejoin civilian life in order to take care of his family, he applied for release from active duty on the ground of hardship. This was approved, since his retention on active duty was not essential to the war effort, and he was separated on December 21, 1944, without appearing before a Retiring Board.

On taking up his practice, plaintiff found that, because of his continuing back trouble and pain, he had to curtail his work sharply. He installed a chair which moved on a trolley around the dental chair, making it unnecessary to bend forward from a standing position; he regularly called upon assistants to hand him instruments; and he had to take daily intermittent rest periods and was often forced to cancel appointments. He was under continuous medical care from 1945 on, receiving a variety of treatments which were unable to arrest his serious symptoms. Early in 1956 he suffered an acute exacerbation of his condition which led to his hospitalization, to the taking of a myelogram (an x-ray of the spinal cord) suggestive of a herniated disc, and finally to an operation which removed a large ruptured disc. This operation gave temporary relief but was largely unsuccessful. Plaintiff's condition became considerably worse. He gave up his dental practice entirely and moved from upper New York State to the warmer climate of Florida. A second myelogram in 1958 again indicated a herniated disc.

In November 1958, plaintiff applied to the Board for Correction of Military Records for a finding that he was permanently incapacited when he was separated in 1944—attaching his private and governmental medical records as well as pertinent affidavits and statements of doctors and others. In February 1959 the Correction Board, without ordering a hearing, notified him that insufficient evidence had been presented to indicate probable material error or injustice at the time of his release—and therefore that his application was denied. This suit was then commenced, and a trial has been had.

■■■■ The first question is whether plaintiff's suit is barred by limitations. He was released from active duty in December 1944 without disability retirement pay, and suit was not instituted until May 1959. But, as we have already indicated, he did not have or request a Retiring Board proceeding on or after his separation, and the first board to consider his claim for disability retirement pay was the Correction Board which denied all relief in February 1959. In these circumstances, his suit was timely under the rule, previously applied in Proper v. United States, 154 F.Supp. 317, 139 Ct.Cl. 511, and Patterson v. United States, 141 Ct.Cl. 435, that the cause of action for disability retirement pay does not accrue until action by the Correction Board where that tribunal is the *first* competent board to decide (or to be asked to decide) that the officer was entitled to such pay. See the discussion in Parts I, C, and II of the opinion in Friedman v. United States, Ct.Cl., 310 F.2d 381, decided this day.

It is true that plaintiff was offered a Retiring Board in 1944 but declined the proffer. In the circumstances present here,[1] this was not enough to ripen the

---

1. Plaintiff was greatly concerned over the immediate needs of his family—his wife was in a hospital on account of a mental illness; his children were living with rela-

claim. As pointed out in our opinion in the companion Friedman case, supra (as well as in earlier opinions), what is required for accrual of the cause of action is final adverse action by the Government—either through the denial by a competent board of disability retirement pay or by the service's refusal to convene such a board on request—rejecting the serviceman's right to disability pay. Under the retirement legislation, the obligation is normally on the Secretary to decide whether a serviceman should be retired for disability with pay (see present 10 U.S.C. § 1201 et seq. (1958), and former 10 U.S.C. §§ 456, 931, 933, 961–965, 971, 34 U.S.C. § 855c–1 (1946); R.S. 1245–1251, 1274); the individual does not waive his claim by failing to apply before his release and, as the Correction Board statute shows, the service is not relieved of its obligation by his failure so to apply. Indeed, the pertinent regulation at the time (see finding 24) provided that officers like Harper, recommended for limited duty, were to be sent before Retiring Boards as a matter of course. Since that was not done, Harper's right survived administratively to and through the Correction Board proceeding and his judicial claim did not ripen until the end of that proceeding.[2] It is not necessary to determine whether plaintiff would have been precluded from recovery had he known at the time he declined the Retiring Board, or by ordinary diligence could have learned of, the serious nature of his ailment. Neither he nor the doctors fully knew the nature and extent of the disability until March 1956.

■ On the issue of the validity of the Correction Board's denial of the claim, our Trial Commissioner has found that plaintiff was permanently incapacitated for active service at the time of his release to inactive duty in 1944 and that the Board's refusal, in 1959, to find him so disabled was arbitrary and unsupported by substantial evidence. We accept and adopt those conclusions, and with some modifications the subsidiary findings upon which they are based.

When plaintiff left active duty in December 1944, he was having continuous discomfort and pain in his back and legs, accompanied by inability to move his legs freely, considerable difficulty in walking stairs, stumbling with his left leg, and limitation of motion even in ordinary walking; he had become nervous; he could no longer participate in sports; and it had been recommended that if retained in service he be kept only on limited duty. It may have been reasonable at that time to view these disabilities as resulting from nothing more than a sprain, strain, or muscular ailment which would not permanently incapacitate. But the progressive deterioration of his condition after his return to civilian life and the discovery, in 1956, of a herniated disc showed that in fact the true nature of his incapacity in 1944 was much more serious than a sprain or strain, and that the previous diagnoses were incorrect. On the basis of the material before the Correction Board, plaintiff made out his case that he had suffered a herniated disc at the time of his accident in August 1942; that this spinal injury, which was aggravated by later occurrences, severely disabled him; that the physicians at that time and for years thereafter did not know that he had sustained this serious disability

tives; and his father needed an operation for cancer—and he therefore desired to effect a quick separation. He was told that Retiring Board proceedings might require additional lengthy hospitalization and that a hardship release would be much speedier. In addition, he thought that he could "get along" or "make [his] own way" in civilian life. See findings 8–9, and 24. At that time neither he nor the Army was aware of the true nature

of his injury as it was later disclosed to be. See findings 7, 18, 28, and 30.

2. We do not believe that the rule that the serviceman's refusal of an offer of a Retiring Board (at the time of separation) is insufficient to accrue the judicial cause of action allows him improperly to extend the limitations period for self-serving reasons. The service has it within its power to order him before a Retiring

and misdiagnosed his ailment [3]; that the herniated disc which was at the bottom of his disabilities was discovered only in 1956; and that his disabilities stemming from that condition were severe and lasting, as shown most dramatically by his diminishing ability to continue his dental practice. The Board obtained no new evidence to the contrary. Nevertheless, it summarily denied him relief on the ground that the evidence was insufficient. In the face of the strong showing he made, this summary denial was arbitrary and the Board's determination cannot be accepted as binding.

The facts proved at the trial in this court sustain and bear out the case made before the Board, and demonstrate anew the lack of support for the administrative determination that plaintiff was not permanently incapacitated on his separation. The proof has shown that the herniated disc which was discovered in 1956 existed in 1944; and it was the cause of his difficulties in 1942–1944 and subsequently. At the time of his release, the official standards for retiring Army officers provided that a herniated disc "is usually considered incapacitating for general military service" (finding 17), and many officers were retired on that ground (finding 29). The Army's regulations and rulings envisaged retirement for officers incapacitated for general service even though they were capable of performing limited service with the supply arms and services (finding 17). See, also, Stanley Weiner v. United States, 148 Ct.Cl. 445. In view of plaintiff's symptoms and disabilities incident to his herniated disc, in 1944 and thereafter, it seems clear that he too should have been retired when he was released from active duty and that he would have been retired if the true facts as to his condition had been known. It was incumbent on the Correction Board so to decide when the facts were presented to it.

The defendant stresses the fact that plaintiff obtained, in August 1945, a medical certificate from his private physician that he was physically qualified for the equivalent of a commercial pilot's rating. This evidence cannot be accorded much weight. Neither Harper's doctor nor anyone else knew at that time (only seven months after his separation) that he had a herniated disc; the view then was that he was still suffering from a back sprain or strain or comparable temporary ailment which would probably yield to treatment. Awareness of his ruptured disc, as well as the graver symptoms and consequences of his disability (including his being forced to reduce and finally to leave his practice), were yet to come.

The plaintiff is entitled to recover disability retirement pay from the time of his release from active service, and judgment will be entered to that effect. The amount of recovery will be determined under Rule 38(c).

JONES, Chief Judge, and DURFEE, LARAMORE and WHITAKER, Judges, concur.

Board, whether he wants one or not, and thus to accrue his judicial claim.

3. The x-rays taken prior to 1955 were negative, but this was not unusual; such x-rays often miss a ruptured disc and diagnosis of that condition is frequently difficult. Also, at the time of Harper's separation in 1944, myelograms were considered dangerous and seldom used.