ColliNS, Judge,
delivered the opinion of the court:
In November 1956, plaintiff, a lieutenant colonel in the United States Army who had served for more than 28 years, was retired from active service by reason of length of service. The basis for the present suit is plaintiff’s assertion that he should have been retired, as of September 1953, for physical disability.[1]
Detailed findings of fact are contained in the report of Commissioner Paul H. McMurray. His findings, subject to a number of modifications, have been adopted by the court and are set forth infra. The facts can be summarized as follows: Plaintiff was first commissioned in 1926, and, in 1941, he began extended active duty as a captain in the Field Artillery Reserve. In 1949, while serving in the Philippines, plaintiff fell on a flight of stairs and injured his spine. In 1950, plaintiff experienced severe low back pain while engaging in calisthenics at Fort Lee, Virginia. He was confined to his quarters for several weeks.
In July 1953, plaintiff was admitted to Brooke Army Hospital, Fort Sam Houston, Texas, because of continuing complaints regarding his hack. He appeared before a Medical Board which made diagnoses of (1) degenerative joint *4 disease and (2) lumbosacral strain and found plaintiff permanently unfit for military service. In accord with the recommendation of the Medical Board, plaintiff’s case was considered by a Physical Evaluation Board. It was the opinion of the Physical Evaluation Board that plaintiff was unfit for service and that the proper disability rating was 30 percent.
The proceedings were considered next by the Army Physical Review Council. On August 12,1953, the Adjutant General wrote plaintiff of the Council’s determination that “The evidence of record does not clinically confirm the existence of any disability of a degree which would preclude the performance of military duty.” Plaintiff submitted objections to the findings of the Council. The entire record was referred to the Army Physical Disability Appeal Board which, on August 31, 1953, decided to concur in the finding that plaintiff was physically fit.
Plaintiff filed a protest in which he asserted that the failure of the Physical Review Council to specify the reasons for its reversal of the finding of disability meant that he was deprived of his right of rebuttal. By letter of September 29, 1953, plaintiff was informed that, after further consideration, the Physical Disability Appeal Board had reaffirmed its decision that he was physically qualified to perform his duties. Plaintiff’s belief that he was disabled continued and, in October 1953, he tendered his resignation to the Adjutant General.
Early in 1954, plaintiff was given another medical examination at Fort Sam Houston. Following the determination that he was physically incapacitated for active duty, plaintiff was again directed to appear before a Medical Board. Such a board was convened at Brooke Army Hospital, and it found that plaintiff was permanently unfit for military service. This finding was sustained by a Physical Evaluation Board which met on June 11,1954, and concluded that plaintiff was 40 percent disabled. The diagnoses were neuralgia, degenerative joint disease, and strain of the lumbosacral ligaments. As in 1953, the recommendation of the Physical Evaluation Board was rejected by the Physical Review Council. In July 1954, the Council’s finding that plaintiff was not dis *5 abled was affirmed by tbe Physical Disability Appeal Board.
On July 19, 1954, plaintiff requested that Ms resignation be held in abeyance, and the Adjutant General complied.
In November 1954, plaintiff was transferred from Fort Sam Houston to Washington, D.C. He was, at various times in the ensuing months, given out-patient treatment at Walter Beed Army Hospital. In July 1956, plaintiff was advised that he would be retired by operation of law on November 30, 1956.[2] Plaintiff was examined at the Pentagon dispensary and was found to be qualified for general service. In September 1956, he was admitted to Fort Belvoir Hospital for evaluation with respect to arthritis of the spine and a mass in the abdomen. During plaintiff’s hospitalization, the lipoma was removed from his abdominal wall; the orthopedic department considered his arthritis not to be disabling.
On November 14, 1956, plaintiff was ordered to report to Walter Beed Army Medical Center for observation, necessary treatment, and appearance before a Medical Board. Plaintiff was admitted to Walter Beed on the following day, and he underwent an extensive series of examinations. The Medical Board, which met on November 21st, concluded that plaintiff was fit for general service; the diagnoses of degenerative joint disease (osteoarthritis) and lumbosacral strain were termed “not incapacitating.”
On November 29,1956, the Adjutant General advised plaintiff that he was physically qualified for retirement and that his retirement would be effective on November 30th. However, in view of plaintiff’s desire to remain on active duty subsequent to January 1, 1957, in order to take advantage of the Servicemen’s and Veterans’ Survivor Benefits Act, ch. 837, 70 Stat. 857 (1956) (codified in scattered sections of U.S.C.), he was recalled on December 1, 1956, and was released from active duty on January 31, 1957.
On February 9, 1957, plaintiff requested the Army Board for Correction of Military Becords to change his discharge so as to provide for physical disability of at least 40 percent. The Correction Board denied plaintiff’s application. Plaintiff also submitted a claim to the Veterans Administration *6 which, in August 1957, advised him that his service-incurred osteoarthritis was considered to be 20 percent disabling.
Commissioner McMurray concluded that, in denying plaintiff disability retirement, the Department of the Army had not acted arbitrarily or without support of substantial evidence. To the extent the issues are factual, we are in agreement with the commissioner. Moreover, we are unable to accept the legal arguments made by plaintiff.
Plaintiff stresses the fact that, upon repeated occasions, he was found 'by an examining physician or a board of officers to be unfit for military duty. The number of such findings of disability does add strength to plaintiff’s case, but they cannot be decisive. As defendant points out, in both 1953 and 1954, the reviewing bodies refused to accept the respective Physical Evaluation Board’s recommendation of disability retirement. Cf. Nichols v. United States, 158 Ct. Cl. 412, 415 (1962). Furthermore, in 1956, the Medical Board at Walter Reed determined that plaintiff was capable of performing general service.
The various agencies which made diagnoses were basically in accord as to the nature of plaintiff’s infirmities. Thus, it appears that the disagreement related to the degree of severity of the ailments and to their effect upon plaintiff’s ability to serve as an officer.[3] For example, Col. Walter A. Kostecld, one of plaintiff’s expert witnesses, testified that: “[the] Walter Reed clinicians have agreed * * * with clinicians at Brooke Army Hospital that there is pathology here, the only difference * * * is in degree.” [4]
The burden is upon plaintiff to show that the Department of the Army erred in denying his application for disability retirement. Johnston v. United States, 157 Ct. Cl. 474, 478 (1962). We cannot say that plaintiff has succeeded in meet *7 ing this burden. We find, to the contrary, that the decision of the Medical Board at Walter Reed and the action of the Correction Board were supported by substantial evidence. Cf. Nichols v. United States, sufra; McEaddy v. United States, 152 Ct. Cl. 311 (1961). The record does not support plaintiff’s allegations that the examinations which he received at Walter Reed just prior to his retirement were “rushed” and inadequate. Although plaintiff’s medical processing was expedited from the administrative standpoint, the various tests and consultations which plaintiff had were sufficiently thorough. Also, the final Medical Board had the benefit of the record of plaintiff’s earlier treatments at Walter Reed as well as the remainder of his file.
Defendant argues that the fact that plaintiff was able to serve efficiently until his retirement shows the propriety of rejecting, in 1953 and 1954, the findings of physical disability. Defendant notes that, for the period June 1, 1955, to May 31, 1956, plaintiff’s performance was rated as “outstanding.” Since plaintiff had a “desk job” and working conditions described as “ideal” during the period in question, the high efficiency rating should not be given undue emphasis in regard to the matter of fitness for general service. Nonetheless, we agree with defendant that plaintiff’s ability to perform the duties assigned to him lends support to the actions of the Department of the Army. Cf. Snell v. United States, 168 Ct. Cl. 219, 226 (1964).
Plaintiff charges that the Medical Board at Whiter Reed applied an erroneous standard of fitness. According to plaintiff, the proper criteria were “Office, Rank or Grade,” ,and the board improperly considered such matters as age and experience.[5] Plaintiff construes the pertinent standards too narrowly. In Johnston v. United States, supra, 157 Ct. Cl. at 476, this court stated:
* * * The regulations promulgated by the Secretary of the Army to effectuate this legislative authority [granted by the Career Compensation Act of 1949, as amended, 10 U.S.C. § 1216 (1964)], while enumerating certain medical standards, reasonably provide that each *8 case will be considered on its individual merits, and that tbie overriding criterion will be general ability to perform the duties commensurate with the serviceman’s age, grade, branch of service, and normal duties. * * *
We are satisfied, on the basis of the record in the present case, that both the standards applied and the result reached were proper.
The inquiry is essentially a factual one. The medical history of the present plaintiff is quite different from those involved in Woodard v. United States, 167 Ct. Cl. 306 (1964); Grubin v. United States, 166 Ct. Cl. 272, 333 F. 2d 861 (1964); and Weiner v. United States, 148 Ct. Cl. 445 (1960), eases cited by plaintiff in which the respective claimants were found to be disabled.
Plaintiff contends that, during the years in which he sought to be retired for disability, he was the victim of numerous procedural irregularities. Great emphasis is placed upon the failure of the Physical Review Council in 1953 (and again in 1954) to state the precise reasons for overturning the finding of the Physical Evaluation Board that plaintiff was physically unfit. We must agree with defendant that plaintiff was adequately informed of the bases for the two decisions of the Physical Review Council. Each year, plaintiff was told in effect that the Council considered his infirmities to be of insufficient severity to warrant a finding of “disability.” In both 1953 and 1954, plaintiff submitted lengthy statements in opposition to the determination of the Physical Review Council.[6] Plaintiff has not shown that he was actually harmed by the Council’s failure to provide detailed reasoning or that any regulation required such specific information.[7]
*9 Accordingly, this matter does not warrant a judgment in plaintiff’s favor. The reasoning of Service v. Dulles, 354 U.S. 363 (1957), and that of United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954), is inapplicable.
Another contention of plaintiff is that the Medical Board at Walter Reed did not grant him a “fair hearing.”[8] Plaintiff’s appearance before the board was extremely brief. However, this fact does not alter our conclusion that the decision of the board was based upon substantial evidence. We cannot accept plaintiff’s allegations that the board treated him mrfairly and arbitrarily.
In conclusion, the record shows widespread agreement that plaintiff was afflicted with osteoarthritis (of the cervical and lumbar spine) and with lumbosacral strain. Certain of the boards, as well as plaintiff’s expert witnesses, felt that plaintiff’s conditions rendered him unfit for military service, while other bodies, including the 1956 Medical Board, considered plaintiff to be physically qualified. The record does not contain sufficient evidence of disability to justify a holding that the Department of the Army acted arbitrarily and erroneously. We cannot say that, in September 1953 or at aaiy time prior to his retirement, plaintiff was physically incapacitated for general duty. It follows, therefore, that plaintiff is not entitled to recover.[9] The petition is dismissed.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Paul II. McMurray, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiff was mandatorily retired from active service in the Regular Army on November 30, 1956, not by reason of physical disability, under the provisions of section 514(d) *10 (4), Officer Personnel Act of 1947, now codified in 10 TT.S.C. § 3916 (1964). He was serving in the grade of Lieutenant Colonel at the time of his retirement, but was advanced to the grade of Colonel on the United States Army Retired List on December 1, 1956, with entitlement to the retired pay of a Colonel with over 30 years’ longevity for basic pay purposes. Plaintiff was recalled to active duty in the grade of Colonel effective December 1, 1956, in view of his desire to remain on active duty subsequent to January 1, 1957, in order to take advantage of the benefits of a then recently enacted Servicemen’s and Veterans’ Survivor Benefits Act, ch. 837, 70 Stat. 857 (1956) (codified in scattered sections of U.S.C.). Plaintiff was relieved from active duty effective January 31, 1957, reverting to his retired status, and has been receiving the retirement pay of a Colonel with 30 years’ service since that date.
2. In this suit, plaintiff asks for judgment as follows:
(1) For the difference between the pay he received as a Lieutenant Colonel on active duty and the pay he should have received as a Colonel, United States Army— Retired, recalled to active duty and serving in that capacity for the period 1 September 1953 through 30 November 1956, plus 6% interest thereon.
(2) For a refund of overpayments in Federal income taxes since 1 September 1953 by virtue of not having been granted disability retirement benefits, together with interest thereon at 6%.
3. Plaintiff, having been first commissioned in the Officers’ Reserve Corps in 1926, entered on extended active duty in 1941 as a Captain, Field Artillery Reserve. He was successively promoted in the Army of the United States, attaining the rank of Colonel on October 23,1945. His appointment as Colonel, Army of the United States, terminated on April 30, 1946, and plaintiff was appointed a Lieutenant Colonel, Army of the United States, on May 1, 1946. In 1947, plaintiff was appointed a Major in the Regular Army, Quartermaster Corps, and in 1949 promoted to Lieutenant Colonel, Regular Army.
4. In 1949, while serving in the Philippines, plaintiff fell on a flight of stairs and injured his spine.
*11 During tbe period from November 13, 1950, to January 30, 1951, plaintiff was under tbe care of an orthopedic surgeon as tbe result of an acute episode of low back pain, which occurred on October 23, 1950, while plaintiff was taking physical exercise at an Army post. Examination at that time revealed acute muscle spasm in the lower back associated with mild sciatic scoliosis and limitation of the lower spine. Neurological examination was normal. The diagnosis at that time was an unstable low back with structural defects in an acute episode. Plaintiff was put on bed rest and conservative treatment on which he improved. ITe wore a lumbosacral support and was advised against overexercising as far as his back was concerned.
5. On January 15, 1952, and again on November 12, 1952, plaintiff was examined and found physically capable of performing duties commensurate with his rank and experience, and on both examinations was assigned a Physical Profile of P U L H E S. These examinations were not 111111 “final type” detailed medical examinations.
fi. Plaintiff’s Efficiency Report, covering the period from June 1, 1952, to January 31, 1953, discloses therein that plaintiff’s Executive Officer considered plaintiff to be active and apparently in good health, although somewhat overweight. For the period from February 1, 1953, to May 31, 1953, plaintiff’s Chief of Section made the following comments on plaintiff’s Efficiency Report:
Loyal, thoroughly dependable, hardworking officer. He possesses unusual analytical ability. Has a cheerful disposition and a pleasing personality. Serious minded, great mental capacity. No mental, physical or moral defects.
7. On July 21,1953, the Post Surgeon at Fort Sam Houston, Texas, recommended that plaintiff be hospitalized in view of continuing complaints of back pain. Plaintiff was admitted to Brooke Army Hospital, where a Medical Board, on July 27, 1953, made diagnoses of (1) degenerative joint disease, (2) lumbosacral strain, and found plaintiff permanently unfit for further military service. The Medical *12 Board, which was composed of three medical officers, recommended that plaintiff appear before a Physical Evaluation Board.
8. On July 30, 1953, plaintiff appeared before a Physical Evaluation Board consisting of three officers, one of whom was a medical officer, convened at Brooke Army Hospital. The Board found plaintiff physically unfit to perform the duties of his office, rank, or grade by reason of physical disability incurred while entitled to receive basic pay as a regular member. The following comment was made after his appearance before the Board:
The Board, after making a thorough study of the medical records, Medical Board Proceedings, and other allied papers, as well as examining the individual and considering his voluminous testimony, considers there are two diagnoses in this case: (1) Degenerative joint disease, multiple, with two X-ray findings of minor joints involved, with exacerbations occasionally; disability rating, twenty percent. (2) Strain, chronic, moderate, with pain on motion of the left primarily; disability rating, ten percent. The Board feels that there is just a question of doubt as to the physical qualifications of this officer to continue on duty, and has given him the benefit of the doubt and declared him unfit for service. The combined disability rating of thirty percent is given. No medical witnesses were called during the hearing.
9. By letter dated August 12,1953, The Adjutant General advised the plaintiff, in pertinent part, as follows:
_ 1. The record of proceedings of the Physical Evaluation Board convened 30 July 1953, at Brooke Army Hospital, Port Sam Houston, Texas, in your case, has been reviewed by the Army Physical Beview Council, a board appointed by the Secretary of the Army. The evidence of record does not clinically confirm the existence of any disability of a degree which would preclude the performance of military duty. You are considered to be physically fit to perform the duties of your office and rank.
2. Prior to final action being taken on your case, if you desire to render a rebuttal based upon the above, such written statement must be prepared and returned within seven (1) days after receipt of this communication.
*13 10. By 1st indorsement dated August 21, 1953, plaintiff submitted a five-page letter to The Adjutant General in rebuttal of the findings of the Army Physical Review Council. On August 26, 1953, The Adjutant General referred plaintiff’s file, including plaintiff’s rebuttal statement, to the Army Physical Disability Appeal Board for remark and recommendations. On August 31, 1953, the Army Physical Disability Appeal Board concurred in the findings of the Army Physical Review Council.
11. By letter dated September 4,1953, The Adjutant General advised the plaintiff as follows:
The record of proceedings of the Physical Evaluation Board before which you appeared at Brooke Army Hospital, Brooke Army Medical Center, Fort Sam Houston, Texas, on 30 July 1953, and your rebuttal of 21 August 1953, have been reviewed by the Army Physical Disability Appeal Board. This Board concurs in the findings of the Army Physical Review Council that you are physically fit for general military service. Therefore the papers in your case have been filed.
12. By 1st indorsement dated September 11, 1953, the plaintiff complained to The Adjutant General that his rights had not been fully safeguarded. He asserted that he had not been advised of the specific reason for the modification of the findings of the Physical Evaluation Board by the Physical Review Council and contended that without such information he had been deprived of an opportunity to file a rebuttal. Plaintiff requested that his protest be referred to the Secretary of the Army, and that in the event such request was not favorably considered, he be permitted to resign from the Army effective October 31,1953.
13. By letter dated September 29,1953, The Adjutant General advised plaintiff as follows:
1. The proceedings of the Physical Evaluation Board in your case, the findings of the Army Physical Review Council, and your rebuttal thereto, together with your First Indorsement, 11 September 1953, were resubmitted to the Army Physical Disability Appeal Board for further consideration. After a further careful review of your case, the Army Physical Disability Appeal Board reaffirms its decision of 31 August 1953, *14 that you are considered physically fit to perforin the duties of your office and rank. ^ í* H»
3. If you desire to resign, it is suggested that your request for resignation be submitted through channels in accordance with Paragraph 2, AN 605-275. Upon receipt of such request it will be given consideration.
14. On October 20, 1953, the plaintiff tendered his unqualified resignation to The Adjutant General with the request that it be effective on or before November 30, 1953. Plaintiff stated in his letter that in his opinion he was not physically qualified for the performance of military duty. He also expressed dissatisfaction with the manner in which his appeals to the Army Physical Eeview Council’s action had been conducted and the concurrence of the Army Physical Disability Appeal Board with the action of the Physical Eeview Council.
15. The Inspector General, Fourth Army, Fort Sam Houston, conducted an investigation during the period October 22, 1953-October 30,1953, concerning the plaintiff’s contentions that the Physical Eeview Council failed to give any reasons for its departure from the findings of the Physical Evaluation Board. The Inspector General, Fourth Army, concluded that the plaintiff had not been advised of the reasons for or “the specific items of disagreement” which formed the basis for the action of the Physical Eeview Council. Further, it was concluded that this asserted lack of specific information precluded the plaintiff from directing his rebuttal to any specific point. The conclusions of the Inspector General of the Fourth Army were approved by the Commanding General, Fourth Army.
16. The Eeport of Investigation was forwarded by the Commanding General, Fourth Army, Fort Sam Houston, Texas, to The Inspector General, Department of the Army, Washington, D.C. The letter of transmittal, dated November 18,1953, contained the following comments:
1. The attached approved report of investigation, which pertains to a matter beyond the jurisdiction of this headquarters, is forwarded under the provisions of paragraph 13b, AE 20-30.
*15 3. In the light of the statement contained in DA Pamphlet 21-48, dated 14 January 1952, to the effect that an individual has a right to send in another statement “on the point of disagreement,” it is the opinion of this headquarters that if the findings and recommendations of the Physical Evaluation Board are reversed the individual concerned should be advised of the specific point of disagreement in order that he may submit a rebuttal to the point in question.
17. By Disposition Form, dated January 29, 1954, The Inspector General requested The Adjutant General to advise the Commanding General, Fourth Army, substantially as follows:
The Assistant Chief of Staff, Gl, DA, has advised that the statement furnished Lt. Col. Imhoff in letter from the Army Physical Eeview Council dated 12 August 1953 that “the evidence of record does not clinically confirm the existence of any disability of a degree which would preclude the performance of military duty” is considered sufficiently definitive to permit preparation of rebuttal within the purview of paragraph 4, page 15 of DA Pamphlet 21-48, dated 14 August 1953.
It is not required by law or regulations, nor is it the policy of the Department of the Army to provide in minute detail the differences in evaluations between the Army Physical Eeview Council (APEC) and the Army Physical Disability Appeal Board (APDAB) on the one hand and the evaluation by a Physical Evaluation Board on the other hand. The decisions of the APEC and the APDAB are based on a consideration and review of the evidence presented in accordance with AE 15-160, AE 40-680 and SB 600-450-5.
Inasmuch as records disclose that Lt. Col. Imhoff has been afforded consideration of his case and of rebuttal to findings of both the Army Physical Eeview Council and the Army Physical Disability Appeal Board, it is the view of the Department of the Army that Lt. Col. Imhoff has had full and fair hearing upon the question of his fitness for duty as provided in current regulations and policies.
By letter dated January 29,1954, the Commanding General, Fourth Army, was notified accordingly.
J8. On February 16, 1954, plaintiff underwent a physical examination at Fort Sam Houston, Texas. The Eeport of Medical Examination indicated that the plaintiff was not *16 qualified “for active duty as per Par 60t, AR 40-105.” The Surgeon General, under date of April 8, 1954, advised The Adjutant General that “Since the final type physical examination indicates that this officer is physically incapacitated for duty, it is recommended that he appear before a medical board and, if indicated, a physical evaluation board.”
19. On April 28, 1954, plaintiff entered Brooke Army Hospital for study and examination for appearance before a medical board. On June 9, 1954, plaintiff appeared before a Disposition Board convened at Brooke Army Hospital. The Board found that the plaintiff was permanently unfit for further military service and recommended that the plaintiff appear before a Physical Evaluation Board.
20. On June 11,1954, the plaintiff appeared before a Physical Evaluation Board convened at Brooke Army Hospital. The Board found plaintiff physically unfit to perform the duties of his office, rank, or grade by reason of physical disability, and evaluated the total disability at 40 percent, based on the following diagnoses:
1. Neuralgia, n.e.c., left, cervical spinal nerve roots, chronic; secondary to (2).
2. Degenerative joint disease, multiple, due to unknown cause, cervical and lumbar spine.
3. Strain, chronic, moderate, lumbosacral ligaments, cause undetermined; manifested by pain, limitation of motion, slight lumbar scolosis with convexity to the left and slight tenderness of the paravertebral area with some spasm of the paravertebral muscles.
21. On June 25, 1964, the Army Physical Review Council reviewed the proceedings of the Physical Evaluation Board of June 11, 1954, and recommended that the findings be modified to show the plaintiff to be physically fit.
22. By letter dated June 29, 1954, The Adjutant General advised plaintiff that the record of proceedings of the Physical Evaluation Board convened June 11, 1954, at Brooke Army Hospital, had been reviewed by the Army Physical Review Council and that “The evidence of record does not reveal the presence of any disability of a degree which would preclude the performance of active military duty. You are considered to be physically fit.” Plaintiff was further ad *17 vised that he could submit a rebuttal prior to final action being taken on his case.
23. By 1st indorsement dated July 12, 1954, plaintiff submitted over four pages of remarks relating to his medical history but specifically stated that his comments were not intended as a rebuttal.
24. On July 13, 1954, The Adjutant General referred the file to the Army Physical Disability Appeal Board for remark and recommendation. The Adjutant General, under date of July 15, 1954, was advised that the Army Physical Disability Appeal Board concurred in the findings of the Army Physical Eeview Council.
25. (a) On July 19, 1954, plaintiff underwent a physical examination at Fort Sam Plouston. The examiners concluded that plaintiff was not qualified for active duty and recommended that he be separated for physical disability.
(b) By letter to The Adjutant General dated July 19,1954, plaintiff requested that action on his letter of resignation be held in abeyance pending receipt of further advice from him. The Adjutant General advised plaintiff on July 22,1954, that his request for withdrawal of his tender of resignation was approved.
28. In November 1954, plaintiff was transferred from Fort Sam Houston to Washington, D.C.
During the period from March 28, 1955, to January 31, 1956, plaintiff was given out-patient treatment at Walter Heed Army Hospital. The clinical records and medical cards were requested and received from Brooke Army Hospital, Fort Sam Houston, Texas. Plaintiff was examined in the Neurology Clinic, Physical Medicine Clinic, Orthopedic Clinic, and Peripheral-Vascular Clinic, and X-rays were taken of plaintiff’s spine.
27. (a) A Walter Reed Physical Medicine Clinical Record, dated May 5,1955, and signed by the Chief of the Physical Medicine Service, discloses, in part, as follows:
* * * he [plaintiff] asked for a letter excusing him from a period on the rifle or pistol ranges which he stated he was to attend in the near future, and this was refused. He was informed that no significant reason could be found for granting such an excuse, particularly *18 in view of the fact that he stated his symptoms were on the left and he fired with his right arm. He was further advised that if he still desired such a letter, it would have to come from the referring Physician, and not from a consultant service.* * *
The record further discloses that on May 18, 1955, the Assistant Chief of the Out-Patient Service did recommend that plaintiff be excused from field activities and range firing until plaintiff’s treatment was completed and a final determination of the limitation of his activities had been made.
(b) In late January 1956, plaintiff was given a final-type physical examination at Walter Eeed. The examiners concluded that he was qualified for retirement.
28. An Officer Efficiency Eeport, covering the period June 1, 1955, to May 81, 1956, discloses that, based on close daily contact with plaintiff, the rating officer stated that plaintiff possessed the physical, mental, and moral qualities for his grade, branch, and length of service; and that plaintiff could be expected to serve adequately in any normal branch assignment commensurate with his grade. Plaintiff’s performance was rated as “outstanding performance of duty found in very few officers.” It was also the rating officer’s opinion that plaintiff would give outstanding performance when promoted to the next higher grade. During this rating year, plaintiff took 35 days’ leave and was on sick leave for 13 days.
29. By letter dated July 31, 1956, plaintiff was advised by The Adjutant General that he would be retired by operation of law on November 30, 1956, pursuant to “Section 514 (d) (4) of the Officer Personnel Act of 1947 (Par. 13, AE 635-130, dated 22 December 1965) [which] requires the retirement of Eegular Army permanent lieutenant colonels 30 days after the daJte of completion of 28 ‘years’ service’.”
30. Plaintiff underwent a Pinal Type Physical Examination at the U.S. Army Dispensary, The Pentagon, Washington, D.C., on September 4,1956, and was found qualified for general service. He was given a Physical Profile of
P U L H E S.
12 1111.
Plaintiff made the following statement in connection with his physical condition:
*19 In the past three years I have appeared before four (4) boards of officers at Brooke Army Hospital and three (3) at Fort Sam Houston and all seven (7) have found me unfit for military duty.
31. Plaintiff was admitted to the Fort Belvoir Hospital on September 6, 1956, and discharged to duty on October 4, 1956. He entered for a general evaluation prior to discharge from the service in regard to a mass in the right upper quadrant of the abdomen and also arthritis of the spine. A narrative summary of his Fort Belvoir hospitalization discloses the following:
* * * X-ray of the cervical spine revealed minimal anterior osteophyte formation on the bodies at C-4, C-5, and C-6. The cervical spine is otherwise normal. Examination of the dorsal spine and lumbar spine revealed very minimal anterior lipping of the bodies of the upper and middorsal region and in the midlumbar region. There were no other significant findings. Sacral ileacs are normal. There are several calcified mesenteric nodes in the right mid abdomen. On the 28th of September a lipoma was removed from the right abdominal wall. Was seen by the Orthopedic Department and felt he had no disabling arthritis, although, per x-ray evidence of minimal osteoarthritis are seen.

Diagnosis:

2144 — Lipoma, abdominal wall, removed.
7250 — -Arthritis, n.e.c., spine, condition unchanged.
32. On November 14, 1956, the Secretary of the Army ordered that plaintiff report at the earliest practicable date to the Commanding Officer, Walter Beed Army Medical Center, for observation, necessary treatment, appearance before a medical board and, if warranted, before a physical evaluation board. By letter of the same date, The Adjutant General sent the medical records to Walter Beed Hospital and advised that the case would be processed in accordance with AB 635-40A and AB 635-40B. This letter further stated as follows:
4. Attention is invited to the fact that Colonel Imhoff is scheduled to be retired mandatorily on 30 November 1956 under the provisions of Section 514(d) (4), Officer Personnel Act of 1947. Therefore, his retirement for any cause cannot be effected later than 30 November *20 1956. It is desired that all action in this case, be expedited and that the medical board or physical evaluation board proceedings be completed in time to be received in the Department not later than 26 November 1956.
S3. Plaintiff was admitted to Walter Need Army Hospital on November 15, 1956, where he underwent extensive physical examinations, consultations, and evaluations in the Walter Need Army Medical Center.
34. A Board of Medical Officers convened at Walter Reed Army Hospital on November 21, 1956, made the following findings and recommendations:

Diagnosis:

7230 1. Degenerative joint disease (osteoarthritis), multiple, minimal, involving the cervical and lumbar spine; cause undetermined; manifested by x-ray evidence of arthritic changes, slight limitation of motion and subjective complaint of pain; unchanged. LOD: Yes.
8331 2. Strain, lumbosacral, bilateral, minimal; unchanged. LOD: Yes.
***** Degree of Disability for Military Service:
None

Type Service Recommended:

General

Qualified for Overseas:

Yes

State Disability Briefly in Nontechnical Language:

None

The Board Recommends That:

Lt Colonel Joseph J. Imhoff, 051009, be returned to full military duty, commensurate with age, rank and experience.
The Clinical Abstract attached to the Medical Board Proceedings concluded as follows:
Present Condition: At the present time, the patient is having very little discomfort and is asymptomatic except for a small tender area on the sacrum. He states, however, that with weather changes and at times with sudden position changes, he does have an increase in pain in his low back and some discomfort in his neck and left shoulder. He also states that he has discomfort and a feeling of swelling in the hands and tightness in the joints of his fingers in the morning; however, this *21 disappears after a few minutes of use. As long as the patient keeps from becoming cold, controls his activity, does not find himself in the position of too much tension at work, and avoids sudden movements, he is relatively comfortable and virtually symptom-free.
Recommendations: It is the opinion of the Chief of General Medicine Service #2 that the patient has received maximum benefits from hospitalization, that he is fit for general military duty commensurate with his age, rank and experience and it is recommended that he be therefore returned to duty.
35. By Order of the Secretary of the Army, dated November 29,1956, plaintiff was advised by The Adjutant General, in part, as follows:
1. In view of your desire to remain on active duty subsequent to 1 January 1957 in order to- take advantage of the benefits of the recently enacted Servicemen’s and Veterans’ Survivor Benefits Act, orders have been issued, extract copy inclosed announcing your retirement effective 30 November 1956, recall to active duty 1 December 1956 and relief from active duty 31 January 1957.
3. It has been determined that you are physically qualified for retirement.
36. Plaintiff, by letter dated December 24, 1956, advised The Adjutant General that he objected to the determination that he was physically qualified for retirement notwithstanding the “medical examinations as may have been made at Fort Belvoir Army Hospital and Walter Need Army Hospital in 1956.” Plaintiff further contended therein that he “should have been retired effective 30 November 1956 with a minimum of forty percent (40%) permanent physical disability.” In reply thereto, plaintiff was advised by The Adjutant General on January 11,1957, that it was determined by The Surgeon General that plaintiff was physically qualified for active military service; and that if plaintiff believed there had been an error or injustice, he might desire to apply to the Army Board for Correction of Military Becords for a review of his case.
37. By application dated February 9, 1957, plaintiff requested the Army Board for Correction of Military Becords *22 to change “My discharge from U.S. Army effective 1 December 1956 * * * to provide for not less than ‘Forty Percent’ (40%) Permanent Physical Disability.” Under date of May 8, 1957, plaintiff was advised that following examination and consideration of his Army records, together with such facts as were presented by plaintiff, the Army Board for Correction of Military Becords on April 24, 1957, determined that insufficient evidence had been presented to indicate probable material error or injustice; and that his application was denied.
38. Plaintiff filed an application dated February 23, 1957, with the Veterans Administration for disability compensation or pension.
39. As a result of a medical examination conducted by the Veterans Administration, including a neurological examination and X-rays of the cervical, thoracic, and lumbosacral spine, plaintiff was rated by the Veterans Administration on August 14,1957, as follows:
J. Original claim.
I. Service connection for residuals of back injury— Lumbar and cervical arthritis, and neuritis.
F. Service records show diagnosis November 1950, of acute strain, lumbar muscles, etiology unknown (no history of trauma). The service records show recurrent treatment for back pain and the diagnosis of degenerative joint disease, multiple, due to unknown cause, and strain, ligaments of lumbosacral region, chronic, cause undetermined, were made in 1953, and 1954, and the claimant was admitted to Walter Keed Army Hospital 11-15-56, for observation, treatment and disposition and returned to duty 11-21-56, with a diagnosis degenerative joint disease, multiple, minimal, involving the cervical and lumbar spine, due to unknown cause, and lumbo-sacral strain, bilateral, minimal.
VA examination 4-26-57, revealed no evidence of impaired function of the musculoskeletal system, instability or residuals of an injury. X-ray of cervical and lumbosacral spine revealed minimal osteoarthritic changes, consistent with the patient’s age. Neurological examination of the patient’s back revealed an area of tenderness to palpation pressure at the L-5 and S-l interspace to the right of the mid-line. There was no evidence of muscle spasm. The diagnosis of scalenus anticus syndrome on the left, upper extremity was made.
*23 1. Incurred PL 28/82 YE 1(a) Pt. I Par. 1(a) 20% from 2/1/57
5003-723 Osteoarthritis of the cervical and lumbar spine
0% from 2/1/57
Neuritis, left upper extremity
0% from 2/1/57 Lumbosacral strain No YB 8-2507 — Disabilities stabilized Eep. Am. Legion.
40. Tlie Yeterans Administration, by letter dated August 19, 1957, advised the plaintiff, in pertinent part, as follows:
This is in reference to your compensation claim.
The evidence, including service records and report of examination shows that neuritis, left upper extremity and lumbo sacral strain were incurred in service but are not disabling to a compensable degree. Osteoarthritis of the cervical and lumbar spine, incurred in service is 20 percent disabling.
If you were not in receipt of retirement pay, you would have entitlement to compensation of $33 monthly from February 1, 1957, the date following your discharge from service. However, compensation and retirement pay may not be paid concurrently. Provision is made however for the waiver of so much of a veteran’s retirement pay equalling his entitlement to compensation.
41. Dr. Hyman D. Shapiro, a practicing physician in the District of Columbia and a Diplómate in the American Board of Neurology and Psychiatry, testified as a witness on behalf of the plaintiff. There is no evidence in the record indicating that plaintiff was ever examined by Dr. Shapiro. Dr. Shapiro testified that he agreed with the findings and recommendations of the 1953 and 1954 Disposition and Physical Evaluation Boards that plaintiff was permanently unfit for military service. This witness further testified that he did not see, nor take into consideration, the Medical Board proceedings conducted at Walter Eeed Hospital in 1956.
42. Colonel Walter A. Kostecki, MC, USA, Post Surgeon, Fort Myer, Yirginia, testified as a witness for plaintiff. Colonel Kostecki had examined and treated plaintiff in 1953, while serving as Post Surgeon at Fort Sam Houston, San *24 Antonio, Texas. This witness, in testifying as to plaintiffs condition in 1958, testified in part as follows:
Q. Did yon feel when you saw him on these occasions that he was able to carry on his full military duties ?
A. That was not for me to say as a surgeon, that is why I referred him to the hospital. That is why my job was much easier.
Colonel Kostecki testified that he did not personally examine plaintiff in 1954, but did concur at that time in the 1954 examinations that found plaintiff not qualified for active service. He was further of the opinion that plaintiff was unfit for duty in 1956, although he had not examined plaintiff since 1953.
43. Major James W. Ransone, MC, USA, who at the time of the trial of this case was Chief, General Medicine Section No. 3, and Consultant in Arthritis and Rheumatology, at Walter Reed General Hospital, and also Assistant Chief Medical Consultant to the Surgeon General, testified as a witness for the defendant. Major Ransone is certified by the American Board of Internal Medicine and regularly examines and treats arthritic patients. From his review of the records, he was of the opinion that, at the time of plaintiff’s release from active duty in 1956, plaintiff was fit for duty commensurate with his age, grade, and experience; that based on well-established medical principles, plaintiff’s arthritis would be best classified as mild or minimal; and that soldiers are retained on active duty with a diagnosis of mild arthritis. Major Ransone further testified that upon the basis of the records in the case he would have recommended in November of 1956 that plaintiff be returned to duty; and that, in his opinion, plaintiff was even fit for duty in 1953, commensurate with plaintiff’s age, grade and experience, and according to the regulations that were in effect at that time.
44. Major Melvin D. Cheitlin, MC, USA, who at the time of the trial of tins case was serving as Chief of Cardiology at Madigan General Hospital, Tacoma, Washington, testified on behalf of defendant. Major Cheitlin is medically certified by the American Board of Internal Medicine. He physically examined plaintiff at Walter Reed Hospital in November of 1956, just prior to plaintiff’s release from active duty. *25 Major Clieitlin testified that it was his impression, after taking plaintiff’s history and conducting a physical examination, that plaintiff, in November 1956, had lumbrosacral strain, which was minimal at that time, and minimal cervical and lumbar osteoarthritis of the spine; and that “on the basis of the examinations, both by the doctors on the ward and by the consultants who saw the patient, with observation of patient at that time on the ward, and taking into account the entire previous history, that at that time, in November of 1956, this man [plaintiff] was considered to be fit for active military service in accordance with his age, rank and experience.” He testified that men in the uniformed services are retained on active duty where there has been a confirmed diagnosis of mild and/or moderate arthritis.
Major Clieitlin further testified that he w,as a member of the Medical Board that convened at Walter Heed Army Hospital on November 21, 1956, to consider plaintiff’s case; that he has had occasion to sit and serve as ,a member of physical evaluation boards; and that from a recent review of the 1956 Walter Need medical records, he was still in agreement with the opinion of the Medical Board, which, on November 21, 1956, recommended that plaintiff “be returned to full military duty, commensurate with age, rank, and experience.”
45. Summarizing the evidence most favorable in support of disability retirement, the record shows that on July 30, 1953, a Physical Evaluation Board found plaintiff physically unfit to perform the duties of his office, rank, or grade by reason of physical disabilities which were given a combined rating of 30 percent.
Again, on June 11, 1954, plaintiff appeared before a Physical Evaluation Board, which found him unfit to perform the duties of his office, rank, or grade by reason of physical disabilities evaluated at 40 percent. It would appear that in the two instances mentioned, the Army authorities could have allowed disability retirement for plaintiff. However, the favorable findings of the two Physical Evaluation Boards cited were reversed upon review by appellate agencies created for the specific purpose of reviewing the proceedings and findings of the lower boards. The evidence *26 does not support a finding of gross error or arbitrary action by sucb appellate agencies.
On several other occasions, a finding was made by a board of officers or as a result of a medical examination to the effect that plaintiff was physically unfit for military duty without assignment of any percentage evaluation of the disabling conditions found. Such findings or recommendations were never approved following review by appropriate appellate agencies of the Army.
46. Based upon a careful review of the complete record, it is found that the action of the Department of the Army, in denying disability retirement in this instance, was not arbitrary, capricious, or grossly erroneous and was supported by substantial evidence.
CONCLUSION OP LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover, and the petition is dismissed.

 The precise nature of plaintiff’s claims is explained in finding 2, infra.

 See tie Officer Personnel Act of 1947, as amended, 10 U.S.C. § 3916 (1964).

 The 1953 Physical Evaluation Board acknowledged doubt as to whether plaintiff was disqualified. See finding 8, infra.

 Colonel Kostecld expressed the opinion that the doubt should be resolved in plaintiff’s favor. Although plaintiff argues that the “doctrine of resolution of reasonable doubt” which the Veterans Administration applies was binding upon the Army, plaintiff fails to indicate a specific basis, in statute or regulation, for this assertion. With respect to use by the military of the Veterans Administration schedule, a distinction must be made between (1) the initial determination regarding disability and (2) rating disabilities which have been found. See, e.g., 10 U.S.C. § 1201 (1964.). In the present case, our concern is with the initial determination. Cf., e.g., Patten v. United. States, 161 Ct. Cl. 131, 135 (1963).

 In support of his assertion that age should not have been considered, plaintiff cites the Veterans Administration schedule for rating disabilities. See footnote 4, supra.

 In 1954, plaintiff stated that Ms remarks were not intended as “rebuttal.”

 Plaintiff places great reliance upon Department of the Army Pamphlet 21 — 48 (the Jan. 14', 1952, and Aug. 14, 1953, editions) which provides general information about physical disability retirement. The pamphlet does not purport to be a regulation as such. It does state (p. 16 of the 1952 edition) that, if the Physical Review Council should disagree with the recommendation of a Physical Evaluation Board, the Council would notify the individual of his right to submit a rebuttal statement “on the point of disagreement.”
Defendant does not question plaintiff’s right of rebuttal. See Army Regulation 15-160 (Aug. 20, 1953). However, defendant does assert that plaintiff was not deprived of the right. As indicated above, we agree with defendant. Here, the point of disagreement was the very existence of “physical disability.” (Other possible grounds for denying disability retirement would be lack of service connection or lack of permanence.)

 Plaintiff relies upon the statutory provision that “No member of the armed forces may he retired or separated for physical disability without a full and fair hearing if he demands it” (10 U.S.C. § 1214. (1964)) and upon DA Pamphlet 21-48 (see footnote 7, supra). Plaintiff has not demonstrated any specific rules which govern Medical Board proceedings. DA Pamphlet 21-48 contains some indication of the nature of Physical Evaluation Board hearings, but the same is not true of Medical Boards. Defendant correctly observes that, in view of the decision of the Medical Board at Walter Beed, plaintiff was not entitled to appear before a Physical Evaluation Board. Cf. Wales V. United States, 132 Ct. Cl. 765, 770, 130 F. Supp. 900 (1955).

 As indicated in finding 2, each of plaintiff’s claims rested upon the premise that he was disabled as of September 1, 1953.

Plaintiff filed a petition for a writ of certiorari July 12, 1967.